UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | : | Case No. 1:14-cv-707 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| AUSTEN DOWNS, | : | |
| | : | |
| Defendant. | : | |

### ORDER TO SHOW CAUSE

This civil action is before the Court *sua sponte*.

### I. STATEMENT OF THE CASE

Like it has in hundreds of cases in this district and thousands nationwide, Plaintiff Malibu Media, LLC initiated this action by filing a complaint on September 5, 2014 against a John Doe Defendant identified only by an Internet Protocol address ("IP address"). (Doc. 1). Malibu Media alleged that the internet subscriber assigned IP address 24.165.105.222 used the BitTorrent file distribution network to infringe twenty-four of Malibu Media's copyrighted works. (Id.) Specifically, Malibu Media owns copyrights for pornographic movies. (Id., Ex. A). (Doc. 1).

Simultaneously with filing its complaint, Malibu Media filed a motion for leave to serve a third-party subpoena prior to a Rule 26(f) conference. (Doc. 2). Malibu Media and its contractors are able to identify the IP address of an alleged infringer, which is assigned by the subscriber's Internet Service Provider ("ISP"), as well as the subscriber's ISP and approximate geographic location. However, only the ISP knows the identity of

the subscriber assigned a specific IP address, information the ISP will not voluntarily provide to third parties such as Malibu Media.  Accordingly, Malibu Media can only obtain the subscriber's identity by serving the ISP with a third-party subpoena.  The Court granted the motion for leave on September 12, 2014.  (Doc. 6).

Subsequently, Malibu Media filed an amended complaint naming Defendant on November 24, 2014.  (Doc. 7).  The Clerk issued a summons on December 1, 2014.  (Doc. 8).  On January 5, 2015, Malibu Media filed a motion for an extension of time to complete service.  (Doc. 9).  By Notation Order entered the same day, the Court granted the motion and ordered Malibu Media to complete service of process by February 3, 2015.

Malibu Media failed to timely file proof of service or seek another extension of time.  On February 9, 2015, the Court issued an Order to Show Cause, directing Malibu Media to show cause why its amended complaint should not be dismissed for failure to effect timely service of process by the February 3, 2015 deadline.  (Doc. 10).  On February 10 and, for some reason, again on February 12, 2015, Malibu Media filed identical copies of a summons return indicating that it completed service pursuant to Rule 4(e)(2)(B) on January 8, 2015 by leaving a copy of the summons and amended complaint at Defendant's home with his father.  (Docs. 11, 12).[1]

Defendant's answer was due on January 29, 2015.  However, Malibu Media did not file its proof of service for over a month after completing service, and only after the

---

[1] The Court notes that the process server waited six days after service to sign and notarize his affidavit of service.  (Docs. 11, 12).

2

Court issued an Order to Show Cause because the docket provided no indication that service had already been completed.

The much delayed filing of the summons return simultaneously forced the Court to unnecessarily expend judicial resources in the issuance of an Order to Show Cause and hindered the ability of the Court to manage its docket. With respect to the filing of an answer or other matters dependent on the date of service of process, the Court's ability to actively manage its docket is entirely dependent on counsel filing a summons return within a reasonable amount of time.

Despite the fact that Defendant had defaulted eleven days prior to Malibu Media filing the first copy of the summons return, neither summons return was accompanied by a Rule 55(a) application for entry of Clerk's default. Accordingly, on February 18, 2015, the Court issued a second Order to Show Cause, which ordered Malibu Media to seek entry of default within 14 days or to "show cause within 14 days why the complaint should not be dismissed against the Defendant for lack of prosecution." (Doc. 13 at 2). Thirteen days later on March 3, 2015, Malibu Media filed an application for entry of Clerk's default. (Doc. 15). The Clerk entered default on March 4, 2015. (Doc. 16). The entry of default stated that Malibu Media "is noticed to file a motion for default judgment within 21 days." (*Id.*) That deadline expired on March 25, 2015. To date, Malibu Media has neither filed a motion for default judgment nor sought an extension of time.

## II. FAILURE TO PROSECUTE

### A. Relevant Background

The Court does not view Malibu Media's conduct in this action in isolation. Rather, the Court views it as part of an unmistakable pattern that has emerged in other actions before this Court and in context of observations made by multiple other federal judges in cases involving Malibu Media.

This Court has observed the conduct of Malibu Media and its counsel of record in over 60 cases filed in this District in the past twelve months. This is not the first case in which Malibu Media has filed a summons return well after the date of service.[2] Counsel appears to have made a misrepresentation in seeking an extension of time to complete service in two cases.[3] The Court also issued an order to show cause after counsel publicly filed a defendant's name in direct violation of two orders unambiguously ordering counsel to file that information under seal.[4]

---

[2] *Malibu Media, LLC v. Tobergta*, 1:14-cv-556 (service completed September 16, 2014, and summons return filed November 18, 2014); *Malibu Media, LLC v. Jablonki*, 1:14-cv-417 (challenged service completed September 19, 2014, and summons return filed November 18, 2014); *Malibu Media, LLC v. Ramsey*, 1:14-cv-718 (service completed January 26, 2015, second motion for extension of time filed February 10, 2015, Order to Show Cause issued March 12, 2015, and summons return filed March 18, 2015).

[3] *Malibu Media, LLC v. Jablonki*, 1:14-cv-417 (motion for extension of time filed on September 15, 2014 included identical language that "[u]pon receipt of the issued summons, Malibu Media immediately instructed its process server to begin attempting to serve the Defendant. To date, despite the process server's efforts, the Defendant has not been served." However, the process server indicated he first received the summons on September 15, 2014); *Malibu Media v. Ramsey*, 1:14-cv-718 (motion for extension of time filed February 10, 2015, service completed on January 26, 2015).

[4] *Malibu Media v. Doe*, 1:14-cv-493 (Doc. 27).

4

Malibu Media asserts that it is necessary to invoke the Court's subpoena power to "propound discovery in advance of a Rule 26(f) conference." (Doc. 2 at 4). However, not a single one of these 60 cases has ever progressed to a Rule 26(f) conference. In fact, most cases are voluntarily dismissed by Malibu Media pursuant to Rule 41(a)(1)(A)(i) without obtaining a summons, but presumably after Malibu Media has used the third-party subpoena to obtain a settlement.[5] The name of the IP subscriber is never provided to the Court in these voluntarily dismissed cases. This makes it impossible for this Court or any other court to determine, for example, if a later action should be dismissed with prejudice under Rule 41(a)(1)(B). In the few cases in which a defendant has appeared with counsel, counsel have raised numerous allegations of impropriety and abusive litigation tactics.[6] The Court is not blind to the reality that these allegations likely substantially underrepresent the amount of misconduct that goes unreported by defendants who simply pay Malibu Media's settlement demand rather than face the prospect of expensive and extensive litigation regarding their purported interest in pornography.

The Court is aware that Malibu Media, through separate local counsel, has filed thousands of similar cases in federal courts across the country. A copyright troll has been defined as "an owner of a valid copyright who brings an infringement action not to be

---

[5] Malibu Media often claims that it will dismiss an action if its "investigation" reveals that the internet subscriber is likely not the infringer. However, Malibu Media has provided this Court with no basis to conclude that any action was dismissed for this reason.

[6] For example, two defendants have asserted that they were not served with a copy of the summons. *Malibu Media v. Jablonski*, 1:14-cv-417 (Doc. 13); *Malibu Media, LLC v. Tobergta*, 1:14-cv-556 (Doc. 11).

made whole, but rather as a primary or supplemental revenue stream." *Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 189 n.1 (D. Mass. 2012) (quoting James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages*, 19 UCLA Ent. L. Rev. 79, 86 (2012)). Under this definition, Malibu Media certainly qualifies. However, Malibu Media generally responds to this allegation by pointing to comments of the trial judge in the so-called bellwether trial as unassailable proof that its intentions and tactics differ from other entities that bring copyright infringement actions related to pornographic movies. *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779 (E.D. Pa. 2013).[7] The greater weight of experience suggests otherwise.

As aptly observed several years ago, "[a] great number of similar cases have been filed in the past several months in this and other District Courts, many of which appear to be simply using the federal courts as an avenue to collect money." *Malibu Media, LLC v. John Does 1-64*, No. 2:12-cv-1262, 2012 WL 4835317, at *2 n.3 (E.D. Cal. Oct. 10, 2012). Courts soon began to comment on "the growing concern about unscrupulous tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded." *Malibu Media, LLC v. Does 1-5*, No. 12-cv-2950, 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012). What quickly emerged were "clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract

---

[7] That court defined a copyright troll as "a non-producer who merely has acquired the right to bring lawsuits against alleged infringers." *Id.* at 780.

settlements from John Doe defendants.  Indeed, this may be the principal purpose of these actions, and these tactics distinguish these plaintiffs from other copyright holders with whom they repeatedly compare themselves." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 89 (E.D.N.Y. 2012) (consolidated cases involving Malibu Media and two similar entities).

One of the first abusive tactics that courts addressed and successfully eradicated was Malibu Media's so-called "swarm joinder" model of filing a single mass action against dozens or even hundreds of John Doe Defendants who allegedly downloaded the same movie. *See, e.g.*, *Malibu Media, LLC v. Does 1-23*, 878 F. Supp. 2d 628, 631-33 (E.D. Va. 2012).  The actions are almost identical:

> The Court is familiar with lawsuits like this one.  These lawsuits run a common theme:  plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff.  The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps.  The rewards:  potentially hundreds of thousands of dollars.  Rarely do these cases reach the merits.
>
> The federal courts are not cogs in a plaintiff's copyright-enforcement business model.  The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial.

*Malibu Media, LLC v. Does 1-10*, No. 2:12-cv-3623, 2012 WL 5382304, at *4 (C.D. Cal. June 27, 2012).  A consensus among federal courts quickly emerged that swarm joinder was inappropriate under Rule 20(a)(2) because each defendant's alleged copyright

7

infringement was a separate and distinct transaction. *See, e.g.*, *Malibu Media, LLC v. Does 1-11*, 286 F.R.D. 113-115-16 (D.D.C. 2012).

In addition to the impropriety of these mass actions under Rule 20, courts also observed that Malibu Media likely had an ulterior motive:

> Finally, the Court is troubled by many aspects of this "swarm joinder" model for copyright litigation. Courts across the country have observed that Plaintiff (and other companies involved in this type of litigation) do not seem interested in actually litigating their copyright claims. Rather, they appear to be using the federal courts only to obtain identifying information for the ISP owners and then attempting to negotiate a quick settlement.

*Malibu Media, LLC v. Does 1-54*, No. 12-cv-1407, 2012 WL 3030302, at *5 (D. Colo. July 25, 2012).[8] Malibu Media's repeated contention that mass actions promoted judicial economy only helped in revealing its true motivation: "the only economy that litigating these cases as a single action would achieve is an economy to plaintiff—the economy of not having to pay a separate filing fee for each action brought." *Malibu Media, LLC v. Does 1-28*, 295 F.R.D. 527, 534 (M.D. Fla. 2012). When quantified, the economic benefits to Malibu Media removed all doubt: "In the seven multi-defendant cases in the Peoria Division of the Central District of Illinois, the Plaintiffs paid $2450 in filing fees. In those same seven cases, there are 97 John Doe defendants. Had these cases been filed as single defendant cases, the Plaintiffs would have paid nearly $34,000 in filing fees."

---

[8] *See also Malibu Media, LLC v. Does*, 923 F. Supp. 2d 1339, 1345-46 (M.D. Fla. 2013) ("[A] number of courts have expressed concern that plaintiffs in this type of litigation have no interest in actually pursuing their legal claims, but instead are using the court system to obtain the identifying information and coerce settlement from putative defendants in lieu of being named in a lawsuit which alleges the illegal downloading of a pornographic film. All four John Doe Defendants make this argument in their Motions and suggest that Plaintiff and Plaintiff's counsel have engaged in such coercive tactics.").

8

*In re BitTorrent Copyright Infringement Cases*, No. 12-cv-1188, 2013 WL 501443, at *6 (C.D. Ill. Feb. 11, 2013) (noting that Malibu Media was responsible for five of the seven cases and 61 defendants).[9]

Malibu Media's next abusive litigation tactic, the attachment of Exhibit C to its complaints, prompted federal district courts in the Eastern and Western Districts of Wisconsin to impose sanctions on Malibu Media and its local counsel. Exhibit C listed pornographic movies with particularly graphic and explicit titles that the defendant allegedly downloaded, but were neither copyrighted by Malibu Media nor part of its infringement works. *Malibu Media LLC v. Doe*, No. 13-cv-207, 2013 WL 4821911, at *1 (W.D. Wis. Sept. 10, 2013). In stark contrast to the "relatively tame names" of Malibu Media's copyrighted movies listed in Exhibit B, "the list on Exhibit C consistently includes far more disturbing lewd, unusual and unredacted titles of pornographic films allegedly also downloaded by the defendant." *Id.*

The Western District of Wisconsin led the way, thoroughly and persuasively rebuffing Malibu Media's proffered legitimate litigation purposes for attaching Exhibit C as "disingenuous." *Malibu Media LLC*, 2013 WL 4821911, at *1. The court concluded that Malibu Media's "intent was to harass and intimidate defendants into early settlements by use of the salacious nature of others' materials, rather than the merit of its own copyright claims." *Id.* After finding that "there exists no good basis upon which a reasonable attorney—subject to the ethical rules and restrictions of Rule 11—could

---

[9] *See also, e.g.*, *Malibu Media, LLC v. Does 1-28*, 295 F.R.D. 527, 534 (M.D. Fla. 2012) ("By filing a single lawsuit against twenty-eight defendants, Malibu has paid only $350 in filing fees, rather than the $9,800 it would have paid if the lawsuits had been brought separately.").

9

conclude that attachment of Exhibit C to a complaint 'for evidentiary purposes only' served any legitimate purpose at that stage of the litigation," the court turned to counsel's subjective intent.  *Id.* at 4.  Similarly, that too was found lacking in good faith:  "While the court agrees with Malibu Media that there is only circumstantial evidence of ill intent, Malibu Media's denials do not pass the smell test, and any denial of improper motive by its counsel does not pass the laugh test."  *Id.*

Notwithstanding Malibu Media's legitimate copyright infringement claims, the court observed that "these internet copyright infringement cases already give off an air of extortion" such than any "objectively reasonable attorney" would recognize the possibility that an innocent defendant could feel compelled to settle a meritless suit simply to avoid becoming publicly associated with pornographic films.  *Malibu Media LLC*, 2013 WL 4821911, at *5.  The inclusion of Exhibit C served only to exacerbate the risk of extrajudicial misconduct while providing no parallel benefit to the merits of Malibu Media's copyright infringement claims.  *Id.*  With no legitimate litigation justification, the court felt that Malibu Media had strayed too close to the line of abusing the judicial process:  "The court's subpoena power may not be leveraged further by counsel to force earlier, larger settlements through explicit references to the alleged misuse of even more outrageous or potentially embarrassing materials copyrighted by a non-client."  *Id.*

Building upon this analysis, the Eastern District of Wisconsin similarly found that "the entirety of Malibu Media's litigation conduct strongly suggests that Exhibit C was filed for an improper purpose."  *Malibu Media, LLC v. Doe*, No. 13-cv-536, 2013 WL

10

6579338, at *4 (E.D. Wis. Dec. 12, 2013). Viewed in context of Malibu Media's prior conduct and with no plausible argument that Exhibit C furthered a legitimate litigation goal, the inescapable conclusion was that Malibu Media filed Exhibit C with the intent to increase the federal judiciary's unwitting participation in a glorified shake down:

> Malibu Media has the legal right to enforce its copyrights, but the sheer number of lawsuits corroborates the Court's belief that Exhibit C was being filed to coerce quick and early settlements. Malibu Media explains that at the beginning of 2013, it stopped suing people in joined suits and began to sue defendants on an individual basis. Malibu Media portrays this as a voluntary decision to focus on "persistent on-line infringers," but in reality, Malibu Media was forced to pursue individual defendants because courts began rejecting its attempts to prosecute "same-swarm joined" cases against multiple defendants. . . . Thus, the widespread use of Exhibit C can be viewed as a concerted attempt to recoup some of the efficiency that was lost when courts started rejecting Malibu Media's attempts to pursue multi-defendant lawsuits. Whatever the reason, these types of cases are already infected with the potential for abuse, and Malibu Media doubled-down by threatening to publicly associate infringers with extreme pornographic works having no relevance to its own copyrights. <u>Malibu Media and its counsel should not be allowed to abuse the legal system in this manner without being called to account for it</u>.

*Id.* Finally, the court found it unavailing that Malibu Media had taken corrective action in that particular case or that Malibu Media had purported to eliminate Exhibit C from its arsenal of coercive litigation tactics utilized in courts across the country. *Id.* Malibu Media's superficial showing of self-imposed penance was wholly outweighed by its status as a repeat offender: "Obviously, the use of Exhibit C is (or was) part of an overall pattern of abusive litigation practices. <u>Malibu Media is a sophisticated litigant, so it should not be allowed to avoid sanctions simply by adapting its tactics after being questioned by multiple federal judges</u>." *Id.*

11

Notwithstanding Malibu Media's contention that it "instructed counsel nationwide to never file Exhibit C with a complaint again," *Malibu Media, LLC*, 2013 WL 6579338, at *4, this Court has borne witness to the fact that Malibu Media has simply evolved this practice rather than eradicate it.  In an Order issued in a separate case on October 6, 2014, this Court *sua sponte* noted a continued vestige of Exhibit C in several paragraphs of Malibu Media's complaint.  *Malibu Media v. Doe*, No. 1:14-cv-383, 2014 WL 4986467, at *5-6 (S. D. Ohio Oct. 6, 2014).  Instead of attaching Exhibit C, Malibu Media adapted its practice and now made an explicit reference to a document with "additional evidence" that the defendant had distributed a large number of third-party files through BitTorrent. *Id.* at 5.  Malibu Media disingenuously offered to produce this document to the Court with the seemingly off-handed remark that "many of the titles to the third party works may also be relevant to proving Defendant is the infringer because they correlate to the Defendant's hobbies, profession, or other interests."  *Id.*  Citing the two Wisconsin district court cases that imposed sanctions for attaching Exhibit C, the Court struck the offending paragraphs from the complaint and ordered Malibu Media to file a conforming amended complaint forthwith.  *Id.* at 6.  Two months later, Malibu Media voluntarily dismissed the action without filing an amended complaint.

> The Court concurs with the following sentiment:
>
> Malibu certainly has the right to protect its copyright, assuming it owns a protectable copyrighted work, by bringing infringement actions against those it believes engaged in infringing conduct.  It is the manner in which Malibu has chosen to prosecute those cases which is problematic, not the nature of the cause of action.

12

*Malibu Media, LLC v. Does 1-28*, 295 F.R.D. 527, 535 (M.D. Fla. 2012).[10] The Court will not deny Malibu Media its right to enforce its copyrights. However, the Court will also not sit idly by as Malibu Media continues to flaunt the procedural rules and uses the Court's subpoena power as leverage to extort settlements, while not proceeding to a Rule 26(f) conference in any of the over 60 actions before this Court. "Malibu Media is a sophisticated litigant, so it should not be allowed to avoid sanctions simply by adapting its tactics after being questioned by multiple federal judges." *Malibu Media, LLC*, 2013 WL 6579338, at *4.

### B. Legal Standard

"Rule 41(b) of the Federal Rules of Civil Procedure confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008). "This measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir. 1999). The Court should consider four factors:

> (1) whether the party's failure is due to willfulness, bad faith, or fault;
> (2) whether the adversary was prejudiced by the dismissed party's conduct;
> (3) whether the dismissed party was warned that failure to cooperate could

---

[10] *See also Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 190 (D. Mass. 2012) ("While it is without question that a valid copyright holder is entitled to seek protection of its intellectual property in federal court, it appears that in at least some of these cases, adult film companies may be misusing the subpoena powers of the court, seeking the identities of the Doe defendants solely to facilitate demand letters and coerce settlement, rather than ultimately serve process and litigate the claims.").

13

>lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005).

A finding of willfulness, bad faith, or fault requires "a clear record of delay or contumacious conduct." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013). Contumacious conduct means behavior that is "perverse in resisting authority" and "stubbornly disobedient." *Schafer*, 529 F.3d at 737 (quoting *Webster's Third New International Dictionary* 497 (1986)). To support this finding, the plaintiff's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Wu*, 420 F.3d at 643.

"[M]ere dilatory conduct involving a failure to file a specified document" is generally not sufficient to support dismissal for failure to prosecute. *Coston v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986). However, a finding that a party "willfully h[e]ld up the proceedings to gain a tactical advantage" would support dismissal. *Kemp v. Robinson*, 262 F. App'x 687, 691 (6th Cir. 2007). While there is no "rule mandating a plaintiff to pursue a default judgment as soon as the clerk enters a default," *id.*, the Clerk noticed Malibu Media to file a motion for default judgment within 21 days and the Court is not aware of any legitimate factors that would justify the delay. (Doc. 16).

Prejudice to a defendant from a plaintiff's lack of prosecution typically occurs only if the defendant is "required to waste time, money, and effort in pursuit of cooperation which the plaintiff was legally obligated to provide." *Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013).

Although the Clerk clearly directed Malibu Media to file a motion for default judgment within 21 days (Doc. 16), the Court must provide clear notice that this action might be dismissed. *Wu*, 420 F.3d at 644. Accordingly, this Order provides Malibu Media with the requisite notice that this action could be dismissed with prejudice pursuant to Rule 41(b).

"[T]he sanction of dismissal is appropriate only if the attorney's actions amounted to failure to prosecute and no alternative sanction would protect the integrity of the pretrial process." *Schafer*, 529 F.3d at 738. However, this Court is not required "to incant a litany of the available lesser sanctions." *Harmon*, 110 F.3d at 368. Given the sheer number of actions Malibu Media files and its penchant for voluntary dismissal, the Court questions whether an alternative sanction would protect the integrity of the pretrial process.

The Court generally should not dismiss an action "merely to discipline an errant attorney because such a sanction deprives the client of his day in court." *Buck v. U.S. Dep't of Agric.*, 960 F.2d 603, 608 (6th Cir. 1992).[11] For example, in *Kemp*, dismissal with prejudice based on counsel's delay was not justified because there was no evidence that the client "sanctioned, authorized, or even had knowledge of his counsel's alleged laggard conduct." *Kemp*, 262 F. App'x at 692.

Here, and in the dozens of other actions before the Court, there is ample evidence that Malibu Media or its "outside general counsel," rather than its local counsel of record,

---

[11] *See also Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980) ("Dismissal is usually inappropriate where the neglect is solely the fault of the attorney.").

15

selects the litigation strategy and tactics.[12]  Accordingly, the general principle that "directly sanctioning the delinquent lawyer rather than an innocent client" may not apply here.  *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1095 (6th Cir. 1994).  The Court of Appeals has held that "just as a lawyer's inadvertence cannot constitute good cause, neither can inadvertence on the part of the lawyer's clerical staff; the omissions of the agent are chargeable to the principal."  *Davis v. Brady*, No. 92-6300, 1993 WL 430137, at *3 (6th Cir. Oct. 22, 1993).  Accordingly, "secretarial negligence in serving defendant is chargeable to counsel."  *Friedman*, 929 F.2d at 1157 (citing *Hart v. United States*, 817 F.2d 78, 81 (9th Cir. 1987))).  Similarly, secretarial negligence will not excuse failing to promptly file a summons return or failing to move for a default judgment.

This Court possesses "substantial discretion in managing its docket and determining whether a delay results in unnecessary burdens on the court."  *Richter v. Am. Aggregates Corp.*, 522 F. App'x 253, 260 (6th Cir. 2013).  Dismissal with prejudice implicates two competing concerns:

> On the one hand, there is the court's need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to actively pursue its claims.  On the other hand is the policy which favors disposition of cases on their merits.

---

[12] *See Malibu Media v. Doe*, 1:14-cv-493 (Doc. 29, Ex. A) (an e-mail from a paralegal at Lipscomb, Eisenberg & Baker, a Miami law firm described as Malibu Media's "outside general counsel," that attached documents and instructed local counsel of record to file the documents "as usual").  The Court is also not ignorant to the likely fact that only local counsel enters an appearance to avoid paying the Court's $200 fee for admission *pro hac vice*.

*Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993). In the more than 60 Malibu Media cases before this Court, Malibu Media has not shown any indication that it intends to prosecute the merits of its copyright infringement claims.[13]

Malibu Media is hereby advised that the Court proposes to dismiss this action with prejudice pursuant to Rule 41(b) for failure to prosecute and failure to comply with the Federal Rules of Civil Procedure based on, *inter alia*, Malibu Media's unexplained delay in filing its summons return and its continued failure to move for default judgment in spite of a directive to do so within 21 days.[14]

### III. CONCLUSION

Wherefore, for these reasons, Malibu Media is **ORDERED** to show cause in writing within **FOURTEEN DAYS** of the entry date of this Order why the amended complaint should not be dismissed with prejudice pursuant to Rule 41(b). Malibu Media shall support its response with verified statements from persons with direct personal knowledge.[15]

---

[13] A single trial almost two years ago against three defendants, all of whom admitted to liability and two of whom settled as to damages prior to trial, is of little relevance to the present inquiry. *Malibu Media v. Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 786-87 (E.D. Pa. 2013).

[14] As is its right, Malibu Media has filed hundreds of actions to enforce its copyrights. Those actions necessarily create a number of deadlines each with distinct but related facts and procedural histories. Malibu Media often implores that it should be treated no differently than any other litigant. The Court requires all litigants to diligently prosecute their claims and expects all representations from counsel to be truthful or promptly corrected. Malibu Media will not be heard to rely on the numerous deadlines and closely related facts that necessarily arise from filing this number of actions as an excuse for failing to meet these standards that apply to all litigants.

[15] The Servicemembers Civil Relief Act ("SCRA") provides that a plaintiff seeking a default judgment must file an affidavit "stating whether or not the defendant is in military service and

**IT IS SO ORDERED.**

Date:  5/26/2015                                      /s/Timothy S. Black
                                                                 Timothy S. Black
                                                                 United States District Judge

---

showing necessary facts to support the affidavit." 50 U.S.C. app. § 521(b)(1). Attached to its application for Clerk's entry of default is an affidavit from counsel that provides in relevant part: "Defendant, Austen Downs, on information and belief, is not on active duty in the U.S. Military." (Doc. 15, Ex. C at ¶ 5). This conclusory statement does not comply with the SCRA and is insufficient to support a default judgment because it is entirely devoid of "necessary facts to support the affidavit." 50 U.S.C. app. § 521(b)(1).